Vickie Lynn ROBERT, Appellant,

v.

The STATE of Texas, Appellee.

No. 66487.

Court of Criminal Appeals of Texas, Panel No. 2.

March 11, 1981.

Rehearing Denied April 8, 1981.

Bill Buckner, Georgetown, for appellant.

John B. Henderson, Jr., County Atty., Cameron, Robert Huttash, State's Atty., Austin, for the State.

Before DALLY, W. C. DAVIS and CLINTON, JJ.

## OPINION

DALLY, Judge.

This is an appeal from an order revoking probation. The appellant was convicted of the offense of passing a forged instrument; the punishment is imprisonment for three years.

Probation which was granted has now been revoked. The court has found that appellant violated the conditions of probation that she would commit no offense against the laws of this State in that she committed the offense of theft.

The appellant asserts that the trial court abused its discretion in revoking probation because the evidence is insufficient to show she violated any law of this State, and because the court did not suppress a statement made by the appellant which it is alleged was unlawfully obtained because of an unlawful arrest.

The appellant urges that the circumstantial evidence admitted to prove that she committed the offense of theft is insufficient without the statement she made after her arrest. Although it appears the statement was lawfully obtained and admitted in evidence, the evidence without the statement is sufficient. In a revocation of probation proceeding the trial judge is the finder of facts, *Battle v. State*, 571 S.W.2d 20 (Tex.Cr.App. 1978); *Davila v. State*, 547 S.W.2d 606 (Tex.Cr.App. 1977) and it is presumed that he did not consider inadmissible evidence. *Maden v. State*, 542 S.W.2d 189 (Tex.Cr.App. 1978); *Howery v. State*, 528 S.W.2d 230 (Tex.Cr.App. 1975); *Reed v. State*, 477 S.W.2d 904 (Tex.Cr.App. 1972). Therefore, even if the statement were inadmissible but the evidence without considering the statement is sufficient the court's order may be sustained.

The appellant was employed at a flower shop in Rosebud in Falls County. A customer testified that in the late afternoon she gave the appellant two twenty dollar bills to pay on her account. The appellant gave the customer a receipt; the receipt was admitted in evidence. Just before closing time the Chief of Police came to the flower shop and told the appellant that a capias for her arrest had been issued in Milam County, and unless she paid a fine of $86.50, he would have to take her into custody. The appellant told the officer she could not make the payment. He permitted her to close the shop, waiting for her in his car outside. After she closed the shop, the appellant approached the officer's car asking him how much money she needed. He

told her; she said she had the money, and she paid the officer. The money that appellant gave the officer included two twenty dollar bills. Later that evening the officer received a telephone call from the appellant's employer. Thereafter the employer signed a complaint accusing the appellant of theft. The officer obtained a warrant, went to the appellant's apartment, and placed her under arrest.

The appellant's employer testified that the appellant closed the flower shop and left in an envelope the money received that day. The envelope did not contain any twenty dollar bills; it contained one dollar bills and checks. The appellant did not have her employer's permission to take any money. The circumstantial evidence, without considering the appellant's statement, is amply sufficient to prove the theft by a preponderance of the evidence and is sufficient to support the trial court's order.

 The appellant also argues that the appellant did not commit the offense of theft, because she took the money under duress or because she was entrapped. The appellant uses these terms in a general sense; she does not analyze the evidence and organize her argument using V.T.C.A. Penal Code, Sections 8.05 and 8.06 in which the defenses of duress and entrapment are defined. The appellant says the capias issued in Milam County for her arrest was not a capias pro fine. She urges the officers were attempting unlawfully to collect a fine before she had been tried and found guilty of an offense. She argues she was forced to "borrow" money from her employer before she could get her employer's permission so that she could pay the fine, which the officers were unlawfully collecting. This argument has little basis in the record except some of the imprecise testimony of the officers concerning the nature of the capias. The capias was not offered in evidence and is not in the record. The record before us does not show that either the defense of duress or of entrapment was developed in the trial court. See V.T.C.A. Penal Code, Sections 8.05 and 8.06. In any event these are defenses which are to be determined by the finder of fact, in this instance the trial judge.

The dissent raises a matter the appellant did not. Why? The dissent finds the appellant "borrowed" the money; the trial judge found that she stole it. Who was the lender? The complainant wasn't; he testified he did not give her permission to take the money. Doesn't this disprove the exculpatory portions of the confession? To repeat, the evidence without the appellant's confession is sufficient to support the revocation order. The trial judge, not this Court, is the finder of facts in a revocation proceeding. On the record before us the trial court did not abuse its discretion in revoking probation.

The judgment is affirmed.

CLINTON, Judge, dissenting.

As I see it, this cause presents a classic situation for applying the settled rule that the State is bound by an exculpatory statement made by an accused in his confession that is introduced by the State unless the statement is shown by other evidence to be untrue. See, e. g., *Walker v. State*, 138 Tex.Cr.R. 343, 135 S.W.2d 992 (1940), and the discussion of the rule in *Starvaggi v. State*, 593 S.W.2d 323 (Tex.Cr.App. 1979); note also that it survived rehearing in *Palafox v. State*, 608 S.W.2d 177 (Tex.Cr.App. 1980).

In its motion to revoke the State alleged, *inter alia*, that on the given date appellant did appropriate described property, of the named owner "without the effective consent of the owner ... and with intent to deprive the said owner of said property ..." Of course, the owner, appellant's employer, did not consent but the ingredient of "deprive" that is at work here is, in the language of V.T.C.A. Penal Code, § 31.-01(3)(A), "to withhold property from the owner *permanently* or for *so extended a period of time*" that substantially its value or enjoyment is lost to the owner.

In her confession appellant admitted taking the money without permission, yet adds "but [I] intended to call my employer, inform her of my action, and bring the money

back to her *tonight*," [1] and continues that she was on the phone to her employer to do so when the officers came to arrest her.

The circumstantial evidence adduced by the State does not demonstrate that her stated intent is false, and as it stands her intent was such "as would clear or tend to clear the accused from fault or guilt," [2] *Palafox v. State*, supra, at 181.

Indeed, that appellant was put in an extremely stressful situation by the arresting officer simply cannot be denied. In the presence, but not in the hearing, of the alleged owner of the shop, Marshall Green,[3] the officer presented appellant with a real Hobson's choice: he told her his instructions were "to either have her or the money whenever the deputy got there" from Milam County.[4] This is the context in which appellant "borrowed" the property, currency, alleged in the indictment, and within minutes literally stated to Chief Wieser what her intentions were.

I respectfully dissent.

1. The confession, apparently in the hand of appellant, was given just after her arrest on the same evening of the alleged offense. (All emphasis is mine unless otherwise indicated.)

2. In the absence of the manager of the flower shop, appellant was left to close up and, following the usual procedure in such instance, appellant was to "put the money in an envelope and the checks or whatever it is, and put them in the filing cabinet" to be later handled by the manager.

3. The majority takes no note of the fact that the flower shop is a "subsidiary" of Green's Funeral Home, Inc., a State-chartered corporation, as Green testified. He holds seventy five percent of its shares, but his wife, who actually manages the flower shop, was considered by appellant to be her employer-supervisor. Of further significance is that Mrs. Green was away from the flower shop throughout these events.

4. The "duress" contention made by appellant is dismissed by the majority because, in its view, the argument "has very little basis in the record except some of the imprecise testimony of the officers..." Here, in part, is the testimony of Milam County Deputy Charles West adduced by the State:

"A: I advised him [Chief Wieser] that I had a County Court capias number 11,731 for a Vickie Lynn Danfield, whom I had knowledge that Vickie Robert and Vickie Danfield were one in the same and I asked him to serve this warrent [sic] for me."
Q: This warrent [sic] number that you mention, is that a warrent [sic] issued out of Milam County?
A: Yes, sir, it is.
Q: What was it for, if you know?
A: Theft of property by check.
Q: Do you have that warrent [sic]?
A: Yes, sir. I do.
Q: What is the date of issuance of that warrent [sic]?
A: The date of issuance is the 8th day of February, 1980."
Further, there is no doubt that the amount due and collected by Chief Wieser was $86.50. I am at a loss to perceive what additional pertinent information could have been supplied by the paper itself to make the testimony more precise.